IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01284-CMA-MEH

RONALD EMMETT KNEEN,

    Plaintiff,

v.

CORRECTIONS CORPORATION OF AMERICA,
HERB SPIWAK, in his personal and official capacities, C.C.A. Corporation,
JOHN FERGUSON, in his personal and official capacities, C.C.A. Corporation,
JUDY BRIZENDINE, in her personal and official capacities, C.C.A. - Crowley,
D. SMELSER, in his personal and official capacities, Warden, C.C.A. - Crowley,
ARISTEDES ZAVARAS, in his personal and official capacities, Director, Colorado D.O.C.,
PAMELA J. PLOUGHE, in her personal and official capacities, Warden, Colorado D.O.C.,
JOANIE SHOEMAKER, in her personal and official capacities, Clinical Services, C.D.O.C.,
JOYCE CROUNK, in her personal and official capacities, Clinical Services, Colorado Territorial Correctional Facility, Colorado, D.O.C.,
DR. LOUIS CABLING, in his personal and official capacities,
DR. ATUL VAHIL, in his personal and official capacities,
MARY KAY CARTER, in her personal and official capacities, Nurse Practitioner, Colorado Territorial Correctional Facility, Colorado D.O.C., and
JILL OLVEY, in her personal and official capacities, Nurse Practitioner, Colorado Territorial Correctional Facility, Colorado D.O.C.

    Defendants.

---

## RECOMMENDATION ON MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is the Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction [filed July 12, 2010; docket #6]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. L.Civ.R 72.1C, the motion has been referred to this Court for recommendation. The Court held a hearing on August 23, 2010 and the matter is now fully briefed.[1]  The Court

---

[1] The Plaintiff was granted a 45-day extension of time to October 28, 2010 within which to file a reply brief in support of his motion, but he failed to do so and failed to request additional time. *See* docket #49. The Court notified Plaintiff on November 2, 2010 that it would proceed

recommends that, for the reasons stated herein, the motion be **denied**.[2]

## BACKGROUND

Plaintiff is a prisoner in Colorado proceeding *pro se* who initiated this civil rights action on May 26, 2010 by filing a motion for leave to proceed *in forma pauperis*. The Plaintiff filed his Complaint on June 3, 2010; subsequently, he filed the present motion on July 12, 2010. The same day, in compliance with a court order, Plaintiff filed an Amended Complaint alleging generally that Defendants have failed to provide him proper medical care following a 1996 diagnosis of hepatitis B and C at his intake medical exam. In the present motion, Plaintiff asserts that he has since been diagnosed with grade III, stage IV cirrhosis of the liver and seeks an order requiring the Defendants to place him on a list or in a program for a liver transplant.

The evidence presented at the hearing, in Plaintiff's verified pleadings and in subsequent briefing indicates that Plaintiff learned in 2006 that the Colorado Department of Corrections ("CDOC") adopted a mandatory policy for inmates wishing to start treatment for chronic viral hepatitis for which the inmate must agree to attend and complete 200 hours of substance abuse

---

with adjudicating the motion without a timely filed reply brief. Docket #69. Notwithstanding, on November 12, 2010, the Plaintiff filed a combined reply brief in support of the present motion and response to the pending motions to dismiss. Docket #71. Even if the Court were to accept Plaintiff's filing as timely, his arguments are not persuasive, as set forth more fully below.

[2]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

courses. It is undisputed that Plaintiff completed the courses in early 2008. In July 2008, Plaintiff requested treatment for hepatitis B and C; he was told to provide certification of coursework and to follow up in six months. In 2009, Plaintiff states that he noticed an increase in symptoms; in January 2009, Plaintiff was evaluated in the chronic care clinic, told the provider that he had completed the required courses and expressed his wish to pursue treatment for hepatitis C. Lab tests were ordered. In April 2009, a provider told Plaintiff that the results were positive; Plaintiff indicated his desire to pursue treatment, so the provider ordered further tests. In late July 2009, Plaintiff asserts he suffered excessive internal bleeding for which he was treated at an outside clinic and which was diagnosed as "esophageal varicies." In August 2009, Plaintiff underwent an upper endoscopy to evaluate for esophageal varicies and for Barrett's esophagus. On August 26, 2009, a provider submitted a consult request to the infectious disease committee for a liver biopsy, which was necessary for Plaintiff to undergo hepatitis C treatment. The committee initially denied the request due to Plaintiff's lab tests showing a contraindication to treatment with ribavirin (necessary for hepatitis C treatment). However, when subsequent lab tests indicated his levels were "normal," the committee approved the biopsy on or about November 19, 2009.

In late November or early December 2009, Plaintiff was transferred to the Colorado Territorial Correctional Facility; a nurse there requested that Plaintiff be scheduled with a provider for hepatitis C treatment. Plaintiff was scheduled for the liver biopsy on December 15, 2009, but the biopsy did not take place. Instead, Plaintiff was seen by a chronic care provider on January 7, 2010, who arranged to reschedule the biopsy. The biopsy took place on February 11, 2010; the pathology report confirmed the presence of grade III stage IV inflammation and cirrhosis.

On March 8, 2010, Plaintiff informed a provider in chronic care that he was anticipating being paroled soon, so the provider determined (with Plaintiff's agreement) it would be best to postpone hepatitis C treatment since it should not be interrupted. However, on March 29, 2010, the

provider ordered the medication necessary for treatment at Plaintiff's request. Plaintiff is a "genotype 1a," which requires a 48-week treatment period.

In April and May 2010, Plaintiff reported to the provider that he was suffering increased fatigue and depression since starting the treatment. On May 13, 2010, Plaintiff requested from the provider that he be placed on "the list for liver transplant." The provider informed Plaintiff that a liver transplant is not a covered benefit within the CDOC. In late May and June 2010, Plaintiff reported to his provider that he was suffering nausea, vomiting and headaches as a result of the treatment.

In July 2010, Plaintiff was admitted to St. Mary Corwin Hospital for acute cholecystitis. He underwent surgery to remove the gallstones during which he experienced excessive blood loss. The attending physician discontinued the hepatitis C treatment due to Plaintiff's depressed blood cell counts. In August 2010, Plaintiff was evaluated by his provider and found to have low white blood cell and absolute neutrophil counts despite having been removed from hepatitis C treatment for a month. The provider referred the Plaintiff to Dr. Vahill for a recommendation regarding continued treatment for hepatitis C.

In the present motion, Plaintiff argues generally that Defendants did not provide him proper medical care following his 1996 diagnosis of hepatitis B and C, and have continued improper medical care following his 2009 diagnosis of grade III stage IV cirrhosis of the liver. Furthermore, Plaintiff contends that Defendants placed him on drug treatment for hepatitis B and C starting April 2, 2010, in contravention of the CDOC's written protocol concerning patients with end-stage liver disease. He states that there is no medical doctor on staff at his facility and, thus, he is unable to confirm with a doctor whether the drug therapy is helping or harming him. Although not plainly stated, the Plaintiff requests an order requiring the Defendants to place him in a liver transplant program and providing him proper medical care for his disease.

**DISCUSSION**

Issuance of a temporary restraining order is subject to the court's discretion. *Hinkel Dry Goods Co. v. Wichison Indus. Gas Co.,* 64 F.2d 881, 883 (10th Cir. 1933). Where the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction. 11A Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 2951 (2d ed. 1995).

A preliminary injunction is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting a preliminary injunction must clearly establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.* The burden is on the movant to establish his right to the relief requested. *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975).

Moreover, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, the Tenth Circuit has identified the following three types of specifically disfavored preliminary injunctions ... (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier,* 427 F.3d at 1258-59 (citations omitted). These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259.

Here, Plaintiff appears to seek a preliminary injunction that would require Defendants to act in a way that (Plaintiff alleges) is contrary to their prior practices, *i.e.*, to change Defendants'

hepatitis C treatment program and to require the CDOC to classify a liver transplant as a covered benefit so that Plaintiff might receive one. Given the relief Plaintiff appears to seek, the relief sought would alter the status quo rather than preserve it and would also require Defendants to engage in affirmative actions. For these reasons, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Schrier,* 427 F.3d at 1259, 1261.

## I.     Irreparable Injury

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted).

Here, the Plaintiff must first show that he will suffer irreparable injury if his request for injunctive relief is denied. *Id.* at 1258. "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C. Cir. 1985)). Irreparable harm is more than "merely serious or substantial" harm. *Id.* (citation omitted). The party seeking the preliminary injunction "must show that 'the injury complained of is of such *imminence* that there is a clear and present need for equitable relief' to prevent irreparable harm." *Id.* (emphasis in original) (citation omitted).

Plaintiff alleges here that, absent proper medical care and a liver transplant, he will die. There is no question that such result, if true, constitutes serious and/or substantial harm. However, Plaintiff fails to demonstrate the imminence of such harm. The Court has reviewed the Plaintiff's

medical records and finds no indication that any physician has recommended or even mentioned a liver transplant. The Plaintiff himself has presented no evidence of such need, except for his own conclusory statements.[3] Defendants' physician witness, Paula J. Frantz, M.D., CDOC Chief Medical Officer, attests that according to widely accepted medical practice guidelines, a patient is appropriate for referral for transplantation if the patient has "decompensated" cirrhosis and a Model for End-Stage Liver Disease ("MELD") score of 10 or more. Docket #28-1 at 9-10, ¶ 44. After reviewing Plaintiff's medical records, Dr. Frantz found that Plaintiff has compensated cirrhosis and a MELD score of 7; thus, she concludes he is not eligible for a liver transplant, even if the CDOC were to provide the benefit. *Id.* at 9-10, ¶¶ 43-46.

The Plaintiff has failed to present any evidence rebutting Dr. Frantz' conclusions.[4] Therefore, the Court finds that Plaintiff has failed to clearly establish his injury is "of such imminence that there is a clear and present need for equitable relief," as required to impose disfavored injunctive relief in this matter.

However, in his Amended Complaint, the Plaintiff alleges "deliberate indifference to serious medical needs," which the Court construes as a claim for violation of his Eighth Amendment right

---

[3]Plaintiff alleges that his gastroenterologist, Dr. Vahill, told him in August 2009 that he needed a liver transplant. However, there is no indication in the medical records of such opinion.

[4]In his reply brief filed out of time, Plaintiff asserts that he is unable to prove an irreparable harm necessary for a preliminary injunction based on the current medical records because Defendants refuse to provide him the ability to obtain a written "diagnosis" of whether he actually needs a liver transplant. *Id.* at 13. Even if this Court were to consider Plaintiff's argument as submitted on a timely basis, the Court finds the argument unpersuasive. Plaintiff's medical records reflect that he does, in fact, have a diagnosis – grade III stage IV cirrhosis of the liver. What he argues he lacks is actually a medical opinion as to how to treat the disease. However, as set forth herein, Dr. Frantz has provided her opinion that, based upon objective standards, Plaintiff is not eligible for a liver transplant. To the extent that Plaintiff disagrees with this opinion, the Defendants are not obligated to provide the Plaintiff with an opposing opinion. *See Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999).

to be free from cruel and unusual punishment. I am aware that a presumption of irreparable injury exists where constitutional rights are infringed. *Kikumura v. Hurley,* 242 F.3d 950, 963 (10th Cir. 2001) (holding that a presumption of irreparable injury exists where plaintiff claimed that monetary relief would not properly redress the violation of his right to free exercise of religion caused by previous denials of pastoral visits). Thus, to be entitled to a presumption of irreparable injury, the Plaintiff must establish a substantial likelihood of success on his constitutional claim.

## II.     Substantial Likelihood of Success on the Merits

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla*., 519 F.3d 1242 (10th Cir. 2008)). The Tenth

Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755. However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Mata*, 427 F.3d at 751 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Plaintiff's grade III stage IV cirrhosis of the liver would likely meet the objective component necessary to show deliberate indifference. However, the Court finds that, considering the evidence presented at this stage of the litigation, Plaintiff has not shown he is substantially likely to succeed in demonstrating the subjective component that Defendants disregarded a substantial risk of harm.

To the extent that Plaintiff argues the Defendants caused undue delay in his treatment, the

Court disagrees. Health care providers at the CDOC notified Plaintiff in 1996 that he tested positive for hepatitis B and C. Docket #7 at 8. According to Dr. Frantz, "the treatment for hepatitis C is not emergent treatment." Docket #28-1 at 9, ¶ 41. It was not until 2006 that Plaintiff looked into treatment for his hepatitis B and C, and learned that he must complete certain coursework in accordance with CDOC policy. Docket #3 at 3. Except for one instance, there is no indication that, between 1996 and 2006, Plaintiff had any symptoms or complained about the hepatitis, or affirmatively requested treatment and was denied.[5]

Plaintiff completed the required coursework in 2008. *Id.* at 4. On July 30, 2008, Plaintiff informed his provider that he had completed the coursework and requested treatment. Docket #44-8 at 33. The provider notes that Plaintiff had no complaints regarding the hepatitis B and C, and he requested that Plaintiff provide copies of the certificates of completion. *Id.* The provider scheduled a follow-up in six months to initiate a "work-up for hep C treatment if eligible." *Id.* On December 31, 2008, Plaintiff told a provider that he was denied release to a halfway house and wanted to pursue hepatitis C treatment. Docket #44-8 at 11. On January 9, 2009, Plaintiff was informed that screening for the hepatitis C treatment (HCV RNA) had been "reordered" and he was scheduled to follow up in three weeks. *Id.* at 8. On February 23, 2009, the provider requested that the "HCV RNA quant result done 2/09." *Id.* at 1. On March 5, 2009, the provider notes the HCV RNA is positive and requests that an appointment be scheduled with Plaintiff in one month to discuss.

---

[5]Plaintiff alleges that, on February 25, 1999, after being transferred to the Fremont Correctional Facility, he was questioned by a nurse about his untreated hepatitis B and C. Docket #7 at 14. She allegedly provided Plaintiff information about the CDOC's "strict protocol for treatment of hepatitis B and C" for patients in late stages of the disease. *Id.* Plaintiff alleges generally that "despite [his] requests, no further medical appointments were scheduled and no treatment for plaintiff's hepatitis B and C was given." Even taking this allegation as true that Plaintiff asked the nurse for treatment and she denied it, he alleges nothing demonstrating that the nurse consciously disregarded a substantial risk of serious harm in 1999.

Docket #44-7 at 37. On April 10, 2009, Plaintiff was notified of the HCV RNA results and he expressed his desire to pursue treatment. *Id.* at 32. The provider ordered laboratory and other tests, including an EKG, chest x-ray and appointment with optometry in preparation for the treatment. *Id.* According to Dr. Frantz, "it does take substantial time to get all of the diagnostic testing done prior to initiation of treatment." Docket #28-1 at 9, ¶ 41.

Plaintiff began treatment one year later; however, the delay appears to have been caused by several factors outside of the Defendants' control: (1) Plaintiff's outside optometry appointment took place in June 2009, and he was found to be a "glaucoma suspect" [docket # 44-7 at 19-20]; (2) Plaintiff suffered esophageal varacies in July 2009 and underwent treatment of them in August through October 2009 [docket #44-7 at 1-12; docket #44-6 at 28-34; *id.* at 8]; (3) the provider's first request for a liver biopsy (necessary for treatment) [docket #44-6 at 24] was denied due to the anemia reflected in Plaintiff's blood tests [docket #44-6 at 4, 13]; (4) one month later, Plaintiff was approved for a liver biopsy in November 2009 [docket #44-1 at 22-23]; however, his appointment for the biopsy on December 15, 2009 did not take place and may have been canceled due to Plaintiff's transfer to the CCCF [*see* docket #44-1 at 17]; (5) Plaintiff was seen by a CCCF provider in January 2010, who rescheduled the biopsy [docket #44-1 at 16]; (6) the biopsy took place on February 11, 2010 [docket #44-2 at 1-3]; (7) the Plaintiff told a provider in early March 2010 that he may be paroled soon, so the provider determined, and the Plaintiff agreed, that treatment, which should not be interrupted, should wait [docket #44-1 at 14]; and (8) when the Plaintiff requested that he start treatment in late March 2010, the provider ordered the appropriate medication and the 48-week treatment started in early April 2010 [*id.* at 13]. The subsequent interruption of Plaintiff's treatment was due to his problems with gallstones in July 2010, which were addressed and treated. Docket #44-4, 44-5. The Plaintiff has presented nothing further demonstrating that any delay in his

treatment has caused him substantial harm.

Dr. Frantz attests that "[t]he provider[s] proceeded correctly according to the clinical standard for the treatment of hepatitis C." Docket #28-1 at 9, ¶ 42. To the extent that the Plaintiff believes his providers have proceeded improperly with tests and treatment of his hepatitis, under controlling Tenth Circuit law, this disagreement over the best course of treatment does not amount to deliberate indifference. *See Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) (disagreement about treating plaintiff's HIV with protease inhibitor was not deliberate indifference).

Considering the totality of the circumstances as presented at this early stage of the litigation, the Court finds that the Plaintiff has failed to establish a substantial likelihood he will succeed in demonstrating the Defendants consciously disregarded a serious medical condition, the delay of which resulted in substantial harm. *See Kikumura*, 242 F.3d at 955 (movant seeking a preliminary injunction that would disturb the status quo must demonstrate not only a substantial likelihood of success on the merits, but also that the factor weighs heavily and compelling in his favor). Consequently, the Court finds that Plaintiff has failed to demonstrate a presumption of irreparable harm necessary to impose a preliminary injunction that would alter the status quo in this case.

### III.    Balance of Hardships

Plaintiff alleges that "granting the motion for TRO and/or Preliminary Injunction will have NO negative impact whatsoever on the defendants," and thus, "the balance of hardships favor the plaintiff because defendant's [sic] have nothing to lose while the plaintiff stands to lose his life." Docket #6 at 5. Defendants contend that a liver transplant is not a covered benefit, and is a matter of a medical nature that traditionally is not within the scope of the Court's jurisdiction to order. Docket #28 at 5. The Court finds that, considering the lack of irreparable injury in this case, the

burden on Defendants (and to the public, in general) outweighs any harm the Plaintiff may suffer from denial of his motion at this early stage.

**IV.     Public Interests**

Plaintiff argues that it is in the public's interest for Defendants to obey the law and comply with the U.S. Constitution.  Since the Court has already determined that Plaintiff is unlikely to demonstrate Defendants violated his Eighth Amendment rights, the Court finds that granting Plaintiff's motion would be adverse to the public interest.

### CONCLUSION

In sum, the Court finds that Plaintiff has not met his burden to show that a preliminary injunction, particularly one that is disfavored, is necessary in this case.  Therefore, this Court recommends that the District Court find the Plaintiff has failed to demonstrate he is entitled to a temporary restraining order or preliminary injunction in this matter.  Based upon the foregoing, this Court respectfully RECOMMENDS that the Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction [filed July 12, 2010; docket #6] be **denied**.

DATED this 23rd day of November, 2010, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge