IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-01284-CMA-MEH

RONALD EMMETT KNEEN,

        Plaintiff,

v.

CORRECTIONS CORPORATION OF AMERICA,
HERB SPIWAK, in his personal and official capacities, C.C.A. Corporation,
JOHN FERGUSON, in his personal and official capacities, C.C.A. Corporation,
JUDY BRIZENDINE, in her personal and official capacities, C.C.A. - Crowley,
D. SMELSER, in his personal and official capacities, Warden, C.C.A. - Crowley,
ARISTEDES ZAVARAS, in his personal and official capacities, Director, Colorado D.O.C.,
PAMELA J. PLOUGHE, in her personal and official capacities, Warden, Colorado D.O.C.,
JOANIE SHOEMAKER, in her personal and official capacities, Clinical Services, C.D.O.C.,
JOYCE CROUNK, in her personal and official capacities, Clinical Services, Colorado Territorial
Correctional Facility, Colorado, D.O.C.,
DR. LOUIS CABLING, in his personal and official capacities,
DR. ATUL VAHIL, in his personal and official capacities,
MARY KAY CARTER, in her personal and official capacities, Nurse Practitioner, Colorado
Territorial Correctional Facility, Colorado D.O.C., and
JILL OLVEY, in her personal and official capacities, Nurse Practitioner, Colorado Territorial
Correctional Facility, Colorado D.O.C.

        Defendants.

_____

**RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS**
_____

        Before the Court is a Motion to Dismiss from CCA Defendants [filed September 7, 2010;

docket #37] and a Motion to Dismiss Amended Prisoner Complaint filed by the "CDOC

Defendants" [filed September 24, 2010; docket #50].  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C.

Colo. LCivR 72.1C, the matters have been referred to this Court for recommendation.  The motions

are fully briefed, and oral argument would not materially assist the Court in their adjudication.  For

the following reasons, the Court recommends that the CCA Defendants' motion be **granted** and the

CDOC Defendants' motion be **granted in part and denied in part**.[1]

**BACKGROUND**

Plaintiff is a prisoner in Colorado proceeding *pro se* who initiated this civil rights action on

May 26, 2010 by filing a motion for leave to proceed *in forma pauperis*.  The Plaintiff filed his

original Complaint on June 3, 2010; subsequently, in compliance with a court order, Plaintiff filed

an Amended Complaint on July 12, 2010.  Plaintiff alleges generally that Defendants have failed to

provide him proper medical care following a 1996 diagnosis of hepatitis B and C at his intake

medical exam in violation of his Eighth Amendment right against cruel and unusual punishment.

Plaintiff asserts that he has since been diagnosed with grade III, stage IV cirrhosis of the liver and

seeks declaratory relief, as well as compensatory and punitive damages against each Defendant.

**I.      Facts**

The following are factual allegations made by the Plaintiff in his Amended Complaint and

offered by Defendants for jurisdictional analysis.  These allegations are taken as true for analysis

under Fed. R. Civ. P. 12(b)(1) pursuant to *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221,

1225 (10th Cir. 2001), and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, __ U.S. __,

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72(b).  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

129 S. Ct. 1937, 1949 (2009).

In May 1996, Plaintiff tested positive for hepatitis B and C.  In early 2008, Plaintiff completed 200 hours of substance abuse courses for inmates wishing to start treatment for chronic viral hepatitis.  In July 2008, Plaintiff requested treatment for hepatitis B and C; he was told to provide certification of coursework and to follow up in six months.  In January 2009, Plaintiff, who was then housed at the Crowley County Correctional Facility (CCCF), was evaluated in the chronic care clinic where he told the provider that he had completed the required courses and expressed his wish to pursue treatment for hepatitis C.  Tests in preparation for the treatment were ordered.

Plaintiff alleges that in June 2009, he was called into the medical facility by Dr. Cabiling for what he thought would be treatment for his hepatitis. B and C.  However, Plaintiff contends that instead of treatment, Dr. Cabiling informed Plaintiff that he had discontinued his prescription for Prilosec because the Plaintiff had ordered "jalapeno squeeze cheese" from the prison canteen. Plaintiff alleges that he was unable to purchase Prilosec from the canteen because of his indigent status.

In late July 2009, Plaintiff asserts he suffered excessive internal bleeding for which he was treated at an outside clinic and which was diagnosed as "esophageal varicies."  On August 4, 2009, Plaintiff underwent an upper endoscopy to evaluate and treat esophageal varicies and Barrett's esophagus.  Plaintiff alleges that on the same date, the treating physician, Dr. Vahil, informed Plaintiff his Prilosec should not have been discontinued and that Plaintiff needed a liver transplant. Plaintiff returned to Dr. Vahil on September 29, 2009 to continue treatment for the esophageal varicies.  Plaintiff alleges that Dr. Vahil told him the hepatitis had permanently damaged his liver beyond any chance of recovery.  However, the September 29, 2009 report submitted by Dr. Vahil

to the CCCF mentions nothing about a diagnosis of stage IV cirrhosis or the need for a liver transplant.

Subsequently, the CDOC infectious disease committee approved a liver biopsy on or about November 19, 2009. In early December 2009, Plaintiff was transferred to the Colorado Territorial Correctional Facility ("CTCF"); a nurse there requested that Plaintiff be scheduled with a provider for hepatitis C treatment. Plaintiff was seen by a chronic care provider on January 7, 2010, who arranged to schedule the liver biopsy. The biopsy took place on February 11, 2010; the pathology report confirmed the presence of grade III stage IV fibrosis and cirrhosis. Plaintiff alleges that the biopsy finally took place after he mailed a letter to the CDOC of his intent to sue.

On March 8, 2010, Plaintiff informed a nurse practitioner in chronic care, Mary K. Carter, that he was anticipating being paroled soon, so the provider determined to postpone hepatitis C treatment explaining that the 48-week treatment period should not be interrupted. However, at Plaintiff's request on March 29, 2010, the provider ordered the medication necessary for treatment. Plaintiff began the treatment on April 2, 2010.

On May 13, 2010, Plaintiff requested from a medical provider[2] that he be placed on "the list for liver transplant." The provider informed Plaintiff that a liver transplant is not a covered benefit within the CDOC. Plaintiff alleges that the provider advised Plaintiff to write a letter to the University of Colorado Medical Center transplant program in Denver. In June 2010, Plaintiff requested that he be permitted two hours during which to review his medical file; however, the medical department allowed him only fifteen minutes for each of two sessions.

_____

[2]Plaintiff identifies this provider as RN Jill Olvey, one of the Defendants named in this case. However, according to the CDOC Defendants, Ms. Olvey was never served and remains unrepresented in this case. Docket #50 at 1 n.1.

Plaintiff brings claims for violation of his Eighth Amendment rights and for negligence against all Defendants in their individual and official capacities, and he seeks a declaration that his rights were violated, $1,000,000.00 in compensatory damages against each Defendant, and $10,000,000.00 in punitive damages against each Defendant.

## II.   Procedural History

On September 7, 2010, Defendants Corrections Corporation of America ("CCA"), contracting operator of the CCCF, John Ferguson, Chief Operating Officer of CCA, Herb Swiwak, Vice President of Health Services for CCA, D. Smelser, Warden at CCCF, and Judy Brizendine, Medical Director at CCCF (collectively "CCA Defendants") filed the present Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing that Plaintiff's Amended Complaint fails to satisfy the subjective component of an Eighth Amendment claim, fails to allege personal participation by the individual Defendants, fails to allege any custom, policy, or practice by the CCA that caused constitutional injury to the Plaintiff, and fails to state a negligence claim.

On September 24, 2010, Defendants Zavares, CDOC Executive Director, Shoemaker, CDOC Clinical Services, Ploughe, CTCF Warden, Crounk, CTCF Clinical Services, Carter, CTCF Nurse Practitioner, Cabling and Vahil, Medical Doctors (collectively "CDOC Defendants") filed the present Motion to Dismiss Amended Prisoner Complaint contending that the Defendants in their official capacities enjoy sovereign immunity from Plaintiff's claims, Plaintiff is not entitled to declaratory relief, Plaintiff fails to state an Eighth Amendment claim since he asserts nothing more than a disagreement with medical providers, Plaintiff fails to demonstrate personal participation by Defendants Zavares, Ploughe, Shoemaker and Crounk, and Plaintiff fails to state a negligence claim.

Plaintiff filed a combined response to both motions on November 12, 2010.  In essence,

Plaintiff argues that he is entitled, under the Eighth Amendment, to a medical diagnosis and/or prognosis of his condition and as to whether he needs a liver transplant. Plaintiff claims that Defendants' "refusal" to provide him a written diagnosis or prognosis demonstrates their deliberate indifference to his serious medical needs. Moreover, Plaintiff contends that Defendants' failure to provide him access to a specialist (*i.e.*, a gastroenterologist) demonstrates deliberate indifference. In addition, with respect to Defendants' arguments concerning sovereign immunity and Plaintiff's lack of entitlement to declaratory relief, Plaintiff points to a forthcoming amended pleading (no such pleading has been filed). Finally, with respect to Defendants' personal participation argument, Plaintiff counters that prison facilities necessarily include a chain of command for which those in charge would be responsible for the acts of their subordinates.

## LEGAL STANDARD

### I.  Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing

subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Id.*

## II.      Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 1949-51. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

## III.      Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not

supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory

on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations

and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably

read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite

the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor

syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*,

935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the

proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see*

*also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188,

1197 (10th Cir. 1989)).  A *sua sponte* dismissal "without affording the plaintiff notice or an

opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on

the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley*

*v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional

quotation marks omitted)).

## CDOC DEFENDANTS' MOTION TO DISMISS

The CDOC Defendants raise defenses under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court

must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked

subject matter jurisdiction." *Mounkes v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing

*Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

## I.      Rule 12(b)(1) Defense

Here, Defendants, in their official capacities, claim they enjoy sovereign immunity from

damages by the Plaintiff under the Eleventh Amendment. Claims against state officials in their official capacities are essentially claims against the state entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village,* 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young,* 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff alleges in his Complaint that he seeks both monetary damages and a declaration that the "acts and omissions described herein violated plaintiff's rights under the Constitution." *See* docket #7 at 26. In essence, Plaintiff seeks a declaration that state officials

(Defendants) have violated his federal rights in the past, which is not permitted pursuant to *Young*. Consequently, the Court finds that any claims for monetary or declaratory relief brought against the CDOC Defendants in their official capacities are barred by the Eleventh Amendment.  The Court recommends that the District Court grant the CDOC Defendants' motion in this regard and dismiss Plaintiff's claims for monetary and declaratory relief against the CDOC Defendants in their official capacities.

Construing the Amended Complaint liberally as I must, the Court finds that, although his request does not appear in the Request for Relief section of the pleading, the Plaintiff also seeks prospective injunctive relief in the form of an order requiring Defendants to place him on a "list" or in a "program" to receive a liver transplant.  *Id.* at 23 ("the plaintiff is in need of a liver transplant to save his life. ... Due to the life threatening status the plaintiff is faced with it is requested that this Honorable Court take emergency measures with this claim to prevent the death of the plaintiff.").[3] As such, to the extent that Defendants' motion seeks dismissal of Plaintiff's claim for prospective injunctive relief against Defendants in their official capacities, the Court recommends that the District Court deny the CDOC Defendants' motion.  *See, e.g., Buchwald*, 159 F.3d at 496 (where plaintiff alleged continued exclusion from medical school violated her constitutional rights, she stated a proper claim against defendants in their official capacities seeking a prospective injunction ordering her admission to the medical school).

## II.    Rule 12(b)(6) Defenses

---

[3]In addition, the Plaintiff filed a motion for temporary restraining order and preliminary injunction with his Amended Complaint on July 12, 2010 [docket #6] seeking this relief; the motion was heard by this Court and has been resolved through recommendation and disposition by the District Court.

A.    <u>Qualified Immunity</u>

The Defendants assert that they are entitled to qualified immunity on claims against them in their individual capacities.  Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an entitlement not to stand trial or face the other burdens of litigation.  *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  The privilege is an immunity from suit rather than a mere defense to liability.  *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation.  *Pearson,* 129 S. Ct. at 816-22.  *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 818; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

According to his Amended Complaint, Plaintiff was housed at the Colorado Territorial Correctional Facility ("CTCF") from approximately December 1997 to June 1998, then again from

December 2009 to, at least, the time the Amended Complaint was filed in July 2010. For each claim alleged by Plaintiff against the CDOC Defendants, the Court examines first whether the Plaintiff has demonstrated on the alleged facts that the Defendants violated his constitutional or statutory rights. If the Plaintiff has stated a constitutional violation, the Court will then proceed to determine whether the right was clearly established at the time of the alleged conduct.

1.    *Claim for Declaratory Relief*

Defendants assert Plaintiff is not entitled to the declaratory relief he seeks, since he must show an interest "greater than the mere satisfaction of a declaration that he was wronged." Docket #50 at 5-6 (citation and brackets omitted). Plaintiff responds only by referring to a "new amended complaint, to follow by November 15." Docket #71 at 29. However, no such pleading was or has been filed.

Nevertheless, the Court disagrees that Plaintiff's request for declaratory relief against the individual Defendants must be dismissed. The case upon which Defendants rely reflects that the Tenth Circuit dismissed a claim for declaratory relief <u>as</u> <u>moot</u> because the Plaintiff had graduated from high school and no longer had any interest  in nor was subject to the school's curriculum, which was at issue in the case. *See Bauchman v. West High Sch.*, 132 F.3d 542, 548 (10th Cir. 1997), *cert. denied*, 524 U.S. 953 (1998); *see also Ashcroft v. Mattis*, 431 U.S. 171, 172-73 (1977) (claim for declaratory relief moot when no "present right" is involved and the primary interest is the emotional satisfaction of a favorable ruling). In this case, Defendants make no argument that Plaintiff's claim for declaratory relief is moot nor that he no longer has any legal interest in his claims. Thus, the Court recommends that the District Court deny the CDOC Defendants' motion as to Plaintiff's claim for declaratory relief against the individual Defendants.

2.      *Claims Pursuant to 42 U.S.C. § 1983*

a.      Personal Participation

Defendants Zavares, Crounk, Ploughe and Shoemaker contend that their names do not appear in any factual allegation made in the Amended Complaint; thus, as Plaintiff has not alleged their personal participation in any incident giving rise to Plaintiff's claims, these Defendants argue that they must be dismissed from this action as a matter of law.   Docket #50 at 10.   Zavares, CDOC Executive Director, Shoemaker, CDOC Clinical Services Director, Ploughe, CTCF Warden, Crounk, CTCF Clinical Services Director, argue they each hold supervisory positions and "Kneen may have included these individuals as named Defendants strictly due to their individual supervisory positions." *Id.* at 10-11.   Plaintiff responds simply that the "chain of command, by design, would typically place those in charge that are qualified to take responsibility for the training and the actions of those below them, thereby rendering them culpable for and assumed to be aware of all activities under their direct command."   Docket #71 at 10-11.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997).   Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008).   Rather, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir. 1997) (quotation and brackets omitted).

The Defendants are correct that Plaintiff makes no factual allegations against Zavares, Crounk, Ploughe and Shoemaker in his Amended Complaint.   Plaintiff concedes his belief that

13

supervisors should be "culpable for and assumed to be aware of all activities under their direct command." Docket #71 at 11. However, the law does not hold a supervisor liable simply for being a supervisor; under Section 1983, the Plaintiff must allege actual participation by the supervisor in a constitutional violation. Here, he does not do so. Therefore, the Court recommends that the District Court grant the CDOC Defendants' motion and dismiss Plaintiff's claims against Defendants Zavares, Crounk, Ploughe and Shoemaker.

b.      Eighth Amendment Claim

Defendants argue that Plaintiff cannot state a viable Eighth Amendment claim against the remaining CDOC Defendants, Cabiling, Vahil and Carter, because his allegations assert nothing more than a disagreement with medical providers. Plaintiff counters that, under the circumstances of his case in which he alleges Defendants provided him no medical attention nor treatment over a period of several years, it would be difficult for him to prove that Defendants knew of and disregarded his serious medical condition if there is nothing in his medical file showing he had a serious medical condition.

However, under Rule 12(b), it is not necessary that Plaintiff *prove* his claim at this stage of the litigation; rather, his Amended Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949. Construing the Amended Complaint liberally as I must, the Court finds that Plaintiff's allegations state a plausible claim for relief under the Eighth Amendment. An Eighth Amendment claim is actionable in cases where the need for additional treatment or referral to a medical specialist is obvious; that is, where (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise, but declines or unnecessarily delays

referral; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition; or (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency. *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).

Plaintiff alleges that he was diagnosed by the CDOC in 1996 with Hepatitis B and C; thereafter, despite the CDOC's knowledge of the condition and Plaintiff's requests for treatment in 1999, 2005, 2008, and 2009, Plaintiff contends the CDOC failed to provide any medical treatment for the condition. Plaintiff alleges that he completed the courses required by the prison's program to commence hepatitis treatment in early 2008, and specifically requested treatment in July 2008 and January 2009. He states that Dr. Vahil told him in August and September 2009 that his esophageal varicies were caused by stage IV liver disease and agreed with Plaintiff that the long untreated hepatitis caused the liver disease. In February 2010, Plaintiff underwent a liver biopsy and was diagnosed with grade III stage IV fibrosis and cirrhosis of the liver. Plaintiff claims that he has repeatedly requested and has been denied treatment for the cirrhosis, such as being placed in a program or on a list for a liver transplant. He alleges that Nurse Practitioner Carter refused to provide him hepatitis treatment upon his request in March 2010 because he was close to parole, despite the "fact" that the CDOC has a policy that provides medication for inmates who are released. He claims that Drs. Cabiling and Vahil refused to provide treatment for the hepatitis and liver disease despite their knowledge of his serious condition. Plaintiff alleges that the Defendants' denial and delay of treatment for his condition has resulted in end-stage liver disease from which he will likely die.

The Court recommends that the District Court find these allegations state a potential claim

for violation of the Eighth Amendment pursuant to *Iqbal*, *Twombly*, and *Self*.  Moreover, the Court recommends finding that Defendants' obligations to treat Plaintiff for a known medical condition were clearly established at the time of their alleged conduct.  *See Self*, 439 F.3d at 1232; *see also Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) (deliberate indifference shown by medical provider failing to treat properly a serious medical condition or official preventing an inmate from receiving medical care or denying access to medical personnel capable of evaluating the inmate's condition); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (deliberate indifference shown by official serving gatekeeper role for medical care who delays or refuses to fulfill gatekeeper role).  As such, the Court recommends that the District Court deny the CDOC Defendants' motion with respect to Plaintiff's Eighth Amendment claims against Defendants Cabiling, Vahil and Carter.

3.     *Claim for Prospective Injunctive Relief*

Defendants contend that Plaintiff does not have a constitutional right to be seen by an outside specialist, and that this Court has no jurisdiction to order that Plaintiff receive a liver transplant, be placed on a transplant list or be provided hepatitis C treatment, since such matters "fall within the scope of medical judgment."  Docket #50 at 13.  Thus, according to Defendants, Plaintiff has failed to state a claim for injunctive relief in this case.  The Court disagrees.

As set forth above, the Court finds that, by alleging he now suffers end-stage liver disease as a result of Defendants' delays or failures to treat his hepatitis C, the Plaintiff has stated a potential claim for an Eighth Amendment violation.  *See Self*, 439 F.3d at 1232.   It remains to be seen through discovery and, possibly, a Rule 56 motion whether Plaintiff can demonstrate sufficient facts at issue supporting his claim, or whether the Defendants' conduct simply "fall[s] within the scope of medical judgment."  Therefore, the Court recommends that the District Court deny the CDOC

16

Defendants' motion with respect to Plaintiff's claim for prospective injunctive relief.

4.   *Negligence Claim*

Defendants contend that allegations of negligent medical care do not rise to the level of an Eighth Amendment violation; thus, Plaintiff's claim for negligence must be dismissed. To the extent that Plaintiff alleges negligent conduct on the part of the CDOC Defendants for his Eighth Amendment claim, the Court agrees with Defendants. However, in his Amended Complaint, Plaintiff makes a separate claim for "negligence" and incorporates the allegations from his previously stated Eighth Amendment claim. Docket #7 at 24. Thus, construing his pleading liberally, the Court finds that Plaintiff states a separate state law cause of action for medical negligence against Defendants Cabiling, Vahil and Carter.

In Colorado, to state a negligence claim, the plaintiff must allege the following elements: "(1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach of duty caused the injury." *Raleigh v. Performance Plumbing & Heating,* 130 P.3d 1011, 1015 (Colo. 2006) (citations omitted). A *pro se* prisoner filing an action for negligence against a licensed medical professional must file with the court a certificate of review for each professional named as a party within sixty (60) days after the service of the complaint. Colo. Rev. Stat. § 13-20-602; *State of Colo. v. Nieto*, 993 P.2d 493, 504 (Colo. 2000) (en banc) (inmate required to file certificate of review even where claim brought against state); *Yadon v. Southward*, 64 P.3d 909, 912 (Colo. App. 2002) (§ 13-20-602 applies to actions filed by pro se parties). "The failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint." Colo. Rev. Stat. § 13-20-602(4); *see also Cestnik v. Fed. Bureau of Prisons*, 84 F. App'x 51, 54 (10th Cir. 2003).

There is no dispute that Plaintiff did not file a certificate of review in accordance with § 13-20-602 in this case.  Plaintiff's only response to Defendants' argument is that he did not have sufficient access to the law library to research the argument.  Docket #71 at 23.  Thus, the Court must recommend that Defendants' motion be granted and Plaintiff's claims for negligence against Drs. Vahil and Cabiling and Nurse Practitioner Carter be dismissed pursuant to Colo. Rev. Stat. § 13-20-602(4).

**CCA DEFENDANTS' MOTION TO DISMISS**

Defendants Corrections Corporation of America ("CCA"), operator of the Crowley County Correctional Facility ("CCCF") pursuant to a contract with the CDOC, John Ferguson, CCA Chief Operating Officer, Herb Spiwak, CCA Vice President of Health Services, D. Smelser, CCCF Warden, and Judy Brizendine, CCCF Medical Director (collectively "CCA Defendants"), move to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) arguing that Plaintiff fails to state the subjective component necessary to show an Eighth Amendment violation, fails to allege personal participation by the individual Defendants, fails to allege any custom, policy or practice by the CCA causing constitutional injury, and fails to state a claim for negligence.

Plaintiff, who was housed at the CCCF from approximately June 2005 to December 2009, counters that he has no access to sufficient legal research to address the argument concerning the certificate of review for his negligence claim, that his claims involve both negligence (medical malpractice) and deliberate indifference, that he plans to retain a medical expert, and that Eleventh Amendment immunity has become so confusing over the years that it no longer makes much sense.

I.      **Eighth Amendment Claim**

        A.      Individual Defendants

18

Plaintiff's claim against Defendants Ferguson, Spiwak, Smelser and Brizendine for deliberate indifference to a serious medical condition pursuant to the Eighth Amendment arises under 42 U.S.C. § 1983.  As set forth above, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote,* 118 F.3d at 1423.  Supervisory status alone does not create § 1983 liability. *Duffield,* 545 F.3d at 1239.  Plaintiff makes no specific allegations of improper conduct in his Amended Complaint against the individual CCA Defendants; rather, he identifies them as "employers or principals for employee's or agent's wrongful acts committed within the scope of their employment at the time plaintiff's rights were violated."  Docket #7 at 23.  Clearly, Plaintiff names these Defendants in their supervisory capacity only.  However, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green,* 108 F.3d at 1302.  Here, Plaintiff alleges no link between these Defendants and the alleged conduct of Drs. Vahil and Cabiling and NP Carter.  Rather, he concedes his belief that supervisors should be "culpable for and assumed to be aware of all activities under their direct command." Docket #71 at 11.  Such allegation is insufficient to show the individual CCA Defendants are liable for damages pursuant to Section 1983.

Consequently, this Court recommends that the District Court grant the CCA Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against the individual Defendants.

B.    Corporate Defendant and Official-Capacity Defendants

A private corporation and employees sued in their official capacities are liable under § 1983 only when an official policy or custom of the corporation causes or is the "moving force of the constitutional violation." *See Monell*, 436 U.S. at 694; *see also Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1216 (10th Cir. 2003) (traditional municipal liability principles apply to claims brought pursuant to 42 U.S.C. § 1983 against private corporations).  Thus, the CCA and its officials would incur liability under § 1983 only if the harm had resulted from a policy or custom on the part of the corporation.  *See Smedley v. Corrections Corp. of America*, 175 F. App'x 943, 946 (10th Cir. Dec. 20, 2005) ("in order to hold CCA liable for the alleged tortious acts of its agents, [the plaintiff] must show that CCA directly caused the constitutional violation by instituting an 'official municipal policy of some nature,' that was the 'direct cause' or 'moving force' behind the constitutional violations" (citations omitted)).

"To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct and causal link between the custom or policy and the violation alleged."  *Jenkins v. Wood*, 81 F.3d 988, 993-994 (10th Cir. 1996) (citation omitted).

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 404 (1997) (emphasis in original). Other than the actions or inactions of CDOC's employees, Plaintiff makes no specific allegation concerning the alleged wrongful conduct of the CCA or its officials. While Plaintiff alleges generally that "[d]uring the CCCF medical orientation [in June 2005] plaintiff made it a point to request treatment for the untreated hepatitis,"(*see* docket #7 at 15), he does not allege that CCA's responsibility arises from its implementation of a custom or policy that resulted in his injury. Plaintiff has not made any allegations that an official policy or custom of CCA was the "moving force" behind the alleged Eighth Amendment violation by CDOC employees.  Thus, Plaintiff fails

to state a § 1983 claim against the CCA or its officials.  Further, as the Court has determined that Plaintiff has not stated any constitutional violation by CCA employees in their individual capacities, the CCA cannot be held liable for an unconstitutional policy or custom. *See, e.g., Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1317-18 (10th Cir. 2002) (declining to hold a municipality liable for an unconstitutional policy or custom "when there was no underlying constitutional violation by any of its officers").

In sum, Plaintiff has established no violation of his Eighth Amendment rights by the CCA or its employees in their official capacities sufficient to state a cognizable 42 U .S.C. § 1983 claim. Accordingly, this Court recommends that the District Court grant the CCA Defendants' motion and dismiss Plaintiff's Eighth Amendment claims against the CCA and the individual Defendants in their official capacities.

## II.      Negligence Claim

For his claim, the Plaintiff simply "incorporates the 'supporting facts' from claim one [Eighth Amendment] for claim two [negligence] as the facts are the same."  Docket #7 at 24.  The Court has already found that Plaintiff makes no specific allegations of improper conduct by the CCA Defendants; thus, his negligence claim against them cannot stand.  Moreover, with respect to the CCA medical professionals, the Court incorporates here its recommendation with respect to Plaintiff's negligence claim against the CDOC Defendants.  As set forth above, a *pro se* prisoner filing an action for negligence against a licensed medical professional must file with the court a certificate of review for each professional named as a party within sixty (60) days after the service of the complaint.  Colo. Rev. Stat. § 13-20-602; *Nieto*, 993 P.2d at 504 (inmate required to file certificate of review even where claim brought against state); *Yadon*, 64 P.3d at 912 (§ 13-20-602

21

applies to actions filed by pro se parties).  "The failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint." Colo. Rev. Stat. § 13-20-602(4); *see also Cestnik*, 848 F. App'x at 54.  Plaintiff failed to file a certificate of review; thus, any claim against the CCA medical professionals must be otherwise dismissed.

## III.    Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1359 (10th Cir. 1989).  As such, in this jurisdiction, the court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations.  *See Bellmon,* 935 F.2d at 1109-10.  The Court may dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him to amend his complaint would be futile."  *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir. 1991)).

Under the circumstances of this case in which a *pro se* Plaintiff suffering a serious medical condition has made only minimal, general allegations against certain supervisory Defendants, this Court recommends that Plaintiff be granted leave to amend his claims to possibly correct the deficiencies noted herein.  The Plaintiff states repeatedly in his response brief that he had intended to file a second amended complaint ("due November 15") to cure certain issues raised by the Defendants; however, he has not yet done so.[4]  Therefore, because it is possible the Plaintiff may

---

[4]While Plaintiff has repeatedly expressed his intent to amend his complaint and was granted substantial time within which to do so (*see* dockets #62 and #69), the Plaintiff has not filed a Second Amended Complaint nor a motion seeking to do so since the last extended

cure the pleading deficiencies for his claims against the CCA Defendants and the CDOC supervisory

Defendants in their individual capacities (which, currently, the Court recommends be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6)), this Court recommends that Plaintiff be allowed to file a

Second Amended Complaint, consistent with Fed. R. Civ. P. 8 and other federal and local rules,

within thirty (30) days of the District Court's Order on this recommendation.

## **CONCLUSION**

In the current Amended Complaint, the Plaintiff fails to state claims against certain CDOC

Defendants and the CCA Defendants, both in their official and individual capacities, upon which

relief may be granted.  However, the Court also finds that Plaintiff states plausible claims against

CDOC Defendants Cabiling, Vahil and Carter.  Accordingly, the Court RECOMMENDS that the

District Court **grant** the Motion to Dismiss from CCA Defendants [filed September 7, 2010; docket

#37] and dismiss Plaintiff's claims raised in his Amended Complaint against the CCA Defendants

in their individual and official capacities.  In addition, the Court RECOMMENDS that the District

Court **grant in part and deny in part** the Motion to Dismiss Amended Prisoner Complaint filed

by the "CDOC Defendants" [filed September 24, 2010; docket #50] as set forth herein, dismiss

Plaintiff's Eighth Amendment claims raised in the Amended Complaint against CDOC Defendants

Zavares, Crounk, Ploughe and Shoemaker in their individual and official capacities and dismiss

Plaintiff's negligence claims raised in the Amended Complaint against all Defendants, but allow

Plaintiff's Eighth Amendment claims against Defendants Cabiling, Vahil and Carter to proceed.

---

deadline of November 15, 2010.  The Court notes that an October 12, 2010 minute order reflects
a deadline to file an amended complaint on or before November 27, 2010.  Docket #56.
However, the Plaintiff expressed his understanding that the deadline was set by this Court orally
at the October 12, 2010 conference as October 18, 2010.  *See* dockets #57 and #55.

Finally, the Court RECOMMENDS that the District Court grant the Plaintiff leave to file a second amended complaint articulating, if possible, claims against the CCA Defendants and CDOC Defendants Zavares, Crounk, Ploughe and Shoemaker in their individual capacities, consistent with this recommendation and the federal and local rules, within thirty (30) days of the District Court's order.

Respectfully submitted at Denver, Colorado, this 10th day of March, 2011.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

24