IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-cv-1284-RBJ-MEH

RONALD EMMETT KNEEN,

      Plaintiff,

v.

ARISTEDES ZAVARAS, in his personal and official capacities, Director, Colorado D.O.C.,
JUDY BRIZENDINE, in her personal and official capacities, Health Service Administrator,
C.C.A. – Crowley,
DR. LOUIS CABLING, in his personal and official capacities,
DR. ATUL VAHIL, in his personal and official capacities, and
MARY KAY CARTER, in her personal and official capacities, Nurse Practitioner, Colorado
Territorial Correctional Facility, Colorado, D.O.C.,

      Defendants.

---

## ORDER

---

This matter is before the Court on defendants Zavaras, Carter, Cabling, and Vahil's

Motion for Summary Judgment [#207] and defendant Brizendine's Motion for Summary

Judgment [#221].  All matters are fully briefed and ripe for review.

**Facts**

This matter arises out of the treatment, or lack thereof, Mr. Kneen received for his

Hepatitis C while incarcerated.  In 1996, Mr. Kneen was diagnosed with Hepatitis B and C

during an intake examination at the Colorado Department of Corrections Denver Receptions and

Diagnostic Center.  At the time, the medical staff told Mr. Kneen that he would need treatment

and continued testing.  On June 28, 2005, after spending time at several other facilities, Mr.

Kneen was transferred to Crowley County Correctional Facility ("CCCF"), which is owned and operated by the Corrections Corporation of America ("CCA").

When Mr. Kneen arrived at CCF the medical staff was notified of his Hepatitis diagnosis. Prior to receiving treatment for Hepatitis C, the Colorado Department of Corrections ("CDOC") requires offenders to undergo drug and alcohol treatment to be educated on how to avoid risky behaviors that can lead to reinfection. [#207-1] at ¶13, 45. The offender must complete six months of drug and alcohol treatment prior to consideration for antiviral treatment. *Id.* CCCF also uses these clinical standards.

Treatment of Mr. Kneen's Hepatitis C

While incarcerated at CCCF Mr. Kneen's Hepatitis C condition was primarily treated by defendant Dr. Louis Cabiling. Mr. Kneen was seen by defendant Dr. Cabiling for the first time on January 19, 2007. Cabiling Aff. [#207-1] at ¶17. At that time, Dr. Cabiling counseled Mr. Kneen about enrolling in drug and alcohol classes due to his Hepatitis C diagnosis and history of alcohol and drug abuse. *Id.* Dr. Cabiling renewed medications and ordered labs for Mr. Kneen six times between January 23, 2007 and May 9, 2007. *Id.* at ¶20. On July 11, 2007 Dr. Cabiling saw Mr. Kneen for a follow-up appointment concerning his Hepatitis C condition. *Id.* at ¶22. Mr. Kneen's physical exam was normal, and Dr. Cabiling ordered continued monitoring of Mr. Kneen's liver enzymes. *Id.* Dr. Cabiling renewed medication and ordered labs three times between July 10, 2007 and August 29, 2007. *Id.* at ¶23. On September 22, 2007 Mr. Kneen was segregated following the discovery of five gallons of homemade alcohol in his cell. [#207-1] at 34. However, Mr. Kneen claims that he underwent a urinalysis that was negative for alcohol or illicit drugs. Dr. Cabiling continued to renew Mr. Kneen's medications on five occasions between October 15, 2007 and January 31, 2008. Cabiling Aff. [#207-1] at ¶28.

On February 1, 2008 Dr. Cabiling saw Mr. Kneen for a follow-up visit because of Mr. Kneen's elevated liver enzymes.  *Id.* at ¶29.  Dr. Cabiling reported that Mr. Kneen had no physical complaints, had an unremarkable exam, and that he again referred Mr. Kneen to the drug and alcohol program.  *Id.*  Mr. Kneen disputes that Dr. Cabiling referred him to drug and alcohol treatment at that appointment.

On February 4, 2008 Dr. Cabiling ordered and performed repeat liver function tests and a Hepatitis panel.  *Id.* at ¶¶32-33.  Results received on February 7, 2008 indicated that Mr. Kneen's liver enzymes were elevated, so Dr. Cabiling ordered another test in one week.  *Id.*  Tests ordered by Dr. Cabiling on February 19 and March 17, 2008 showed improvement.  Defendants claim that Mr. Kneen was again found with homemade alcohol on April 5, 2008.  The nurses who examined Mr. Kneen indicated that his breath had a "very fruity/sour smell" which defendants claim is consistent with consuming alcohol made from Metamucil.  *Id.* at ¶35; [#207-1] at p. 41.  Mr. Kneen disputes this characterization and reiterates that he has not tested positive for alcohol or illicit drug use.

Mr. Kneen's liver function was tested again in May 2008, and his liver enzymes were found to be moderately elevated but improving.  Cabiling Aff. [#207-1] at ¶39.  Mr. Kneen was next seen by Dr. Cabiling on July 30, 2008 for his Hepatitis C condition.  Mr. Kneen reported no physical complaints, and his exam was otherwise unremarkable.  At this appointment Dr. Cabiling reports that Mr. Kneen informed him that he had completed the drug and alcohol class.  *Id.* at ¶39.  Mr. Kneen maintains that he had already provided proof of his program completion to Dr. Cabiling.  Regardless, it is undisputed that Dr. Cabiling asked for Mr. Kneen's certificate of completion at this appointment, either again or for the first time, so that Dr. Cabiling could "order the necessary testing to begin the process of determining Mr. Kneen's eligibility for

Hepatitis C antiviral treatment." *Id.* Dr. Cabiling then ordered that a liver function test be performed within six months, and an HCV-RNA Quantitative Test be performed within one month to measure the Hepatitis C in Mr. Kneen's blood. *Id.* at ¶50-51. Dr. Cabiling renewed Mr. Kneen's medications on five occasions between August 18, 2008 and December 17, 2008.

Mr. Kneen met with the nursing staff on December 31, 2008 to request Hepatitis C treatment. [#207-1] at 45. The treating nurse noted that Mr. Kneen had been denied transfer to a halfway house and has "multiple papers" from drug and alcohol. *Id.* She sent the notes to Dr. Cabiling for his review. *Id.* Dr. Cabiling ordered labs and renewed medications three times between January 8, 2008 and February 9, 2009. [#207-1] at ¶57.

Mr. Kneen was next seen by Dr. Cabiling on February 23, 2009. *Id.* at ¶58. According to Dr. Cabling, Mr. Kneen provided him with his proof of completion at this appointment. Mr. Kneen maintains that he previously provided Dr. Cabiling with his drug and alcohol documentation, but that he did so again. Regardless, it is at this point that Dr. Cabiling started Mr. Kneen's eligibility process and ordered a Hepatitis-C "work-up." *Id.* at ¶61. A lab evaluation on March 5, 2009 showed that Mr. Kneen had detectable HCV-RNA. *Id.* at ¶62. Mr. Kneen was seen by Dr. Sutton on April 10, 2009, who noted that Mr. Kneen had completed the drug and alcohol program and wished to pursue treatment. Dr. Sutton ordered a Hepatitis-C genotype test, complete metabolic profile, and ordered a follow-up appointment. [#207-1] at 48. Dr. Cabiling ordered a chest x-ray, electrocardiogram, optometry test, and additional labs on April 2, 2009. [#207-1] at ¶64. Mr. Kneen was seen by an optometrist on June 1, 2009 because glaucoma was suspected. *Id.* at ¶65. Mr. Kneen's liver biopsy was put on hold pending the outcome of his optometry evaluation. [#207-1] at 51.

On July 29, 2009 Mr. Kneen was seen by Dr. Cabiling because he had vomited blood on two occasions in the past two days. *Id.* at 52. Dr. Cabiling suspected that Mr. Kneen had possible esophageal varices and ordered an esphagastroduoden-oscopy (EGD). *Id.* Dr. Cabiling saw Mr. Kneen the next day for a follow-up visit, and Mr. Kneen reported that there was no more vomiting and that he was feeling better. *Id.* at 53.

On August 4, 2009 an EDG was performed by Dr. Vahil, a doctor at an outside facility that CCCF contracted with. Dr. Vahil confirmed the presence of esophageal varices, performed a band ligation, and recommended a repeat EGD. Vahil Aff. [#207-3] at ¶¶7-11. Dr. Cabiling received and reviewed the results on August 6, 2009 and prescribed Corgard for 180 days and Prilosec for 90 days. [#207-1] at ¶71. On August 24, 2009 Dr. Cabiling received the results from the genotype tests and submitted a request for a liver biopsy. *Id.* at ¶71-72. Dr. Cabiling had a follow-up appointment on August 26, 2009 in which Mr. Kneen presented well physically and reported no active bleeding. *Id.* at ¶73. Dr. Cabiling noted that all the Hepatitis C work-up requirements had been met with the exception of a complete blood count ("CBC"), which he ordered. *Id.* The CBC results showed that Mr. Kneen's hemoglobin and hemacrit levels were in "absolute contradiction to antiviral treatment," and the doctor ordered iron supplements for Mr. Kneen to improve his iron levels. *Id.* at ¶74. Reports on September 3 and 24, 2009 indicated that Mr. Kneen's levels had improved. *Id.* at ¶75.

On September 29, 2009 Dr. Vahil performed a repeat EGD. [#207-3] at ¶14. The EGD showed esophageal varices, requiring Dr. Vahil to perform a band ligation. *Id.* Dr. Cabiling received and reviewed the results of the EGD on October 5, 2009 and prescribed 180 days of Carafate and Prilosec. [#207-1] at ¶77. On October 13, 2009 Mr. Kneen returned to the clinic to ask why his liver biopsy had been denied. Ambulatory Health Record [#207-1] at 59. Sandra

Johnson, the provider with whom Mr. Kneen spoke, informed him that his liver biopsy was denied because of his hemoglobin and hemacrit levels. *Id.* On October 22, 209 Dr. Cabiling faxed Mr. Kneen's CBC to the CDOC infectious disease committee for reconsideration of a liver biopsy. *Id.* at ¶80.

On November 12, 2009 Dr. Vahil performed another EGD, confirmed esophageal varices, and performed a band ligation. [#207-3] at ¶21-24. Dr. Vahil informed the staff at CCCF that Mr. Kneen may have cirrhosis due to his Hepatitis C and the presence of esophageal varices, but that a liver biopsy would be needed to confirm the diagnosis. *Id.* at ¶25. This appointment was the last time that Dr. Vahil saw or treated Mr. Kneen.

On November 17, 2009 Dr. Cabiling discontinued Mr. Kneen's iron supplements, because his hemoglobin and hematocrit levels had returned to normal. [#207-1] at ¶82. On November 19, 2009 Dr. Cabiling documented that Mr. Kneen was approved for antiviral treatment. *Id.* at ¶83. Dr. Cabiling ordered that Mr. Kneen be informed of his approval and directed Mr. Kneen to send a kite to the clinic at his new facility upon his arrival. Dr. Cabiling then entered a restriction into the computer system indicating that Mr. Kneen would need to be moved from a private prison to a state facility in order to undergo Hepatitis C treatment. *Id.* at ¶83. After November 23, 2012 Dr. Cabiling no longer treated Mr. Kneen. *Id.*

Mr. Kneen was then transferred to Colorado Territorial Correction Facility ("CTCF"), a state run facility. On January 10, 2010 Mr. Kneen saw Nurse Carter for the first time for his Hepatitis C condition. [#207-4] at ¶7. Mr. Kneen missed a liver biopsy appointment previously for an unknown reason, and Nurse Carter submitted a request to reschedule it. *Id.* at ¶9. On February 11, 2010 Mr. Kneen underwent a liver biopsy. *Id.* at ¶14. Mr. Kneen saw Nurse Carter for a follow-up appointment on March 8, 2010. *Id.* at ¶¶15-17. According to Nurse Carter, Mr.

Kneen presented well and informed her that he was going to be released on parole.  Mr. Kneen

states that he only told Nurse Carter that he had been before the parole board, not that he would

be released.  Nurse Carter then informed Mr. Kneen about the importance of completing

Hepatitis C treatment once it had begun.  Nurse Carter advised Mr. Kneen that he should begin

treatment once he is paroled or after if he was denied parole.  On March 29, 2010 Nurse Carter

again saw Mr. Kneen for his Hepatitis C condition, and Mr. Kneen insisted that his treatment

begin.  *Id.* at ¶18.  Nurse Carter ordered pegylated interferon and ribavirin to begin Mr. Kneen's

treatment.  *Id.*  This was the last time Nurse Carter treated Mr. Kneen for his Hepatitis-C

condition.

       Mr. Kneen, proceeding *pro se*, filed this action on June 3, 2010 [#2].  With the Courts'

permission Mr. Kneen, now proceeding with counsel, filed an amended complaint [#202].  Mr.

Kneen brings claims pursuant to 42 U.S.C. §1983 for denial of medical care and delay of

medical care in violation of the Eighth Amendment against Ari Zavaras, the Executive Director

of DOC, Nurse Mary K. Carter, Judy Brizendine, Dr. Louis Cabiling, and Dr. Atul Vahil.[1]

       **Standard**

       The Court may grant summary judgment if "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

moving party has the burden to show that there is an absence of evidence to support the

nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving

party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  A

fact is material "if under the substantive law it is essential to the proper disposition of the claim."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a

---

[1] Warden D. Smelser was dismissed by the Court on June 7, 2012. [#201].

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

Because some of the defendants assert a qualified immunity defense, the summary judgment standard for those defendants is subject to a "somewhat different analysis from other summary judgment rulings." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). The qualified immunity doctrine "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Toevs v. Reid*, 646 F.3d 752, 755 (10th Cir. 2011) (internal citations omitted). To overcome summary judgment based on qualified immunity, the plaintiff "must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Steffey*, 461 F.3d at 1221.

**Conclusions**

Prisoners, because of their confinement, cannot provide for their own medical care. Therefore, prisons owe a duty, indeed a constitutional duty, to inmates to provide necessary and appropriate care. Mr. Kneen argues that his constitutional right to obtain necessary and appropriate care for his liver condition was violated. Specifically, a "prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

Deliberate indifference in the context of medical treatment has both an objective and a subjective component. *Id.* The objective component requires that the deprivation be "sufficiently serious." *Id.* "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999)). The subjective component is met when a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. 825, 837 (1994).

Before addressing each defendant's alleged violation, the Court must first determine whether defendants Zavaras, Carter, Cabiling, and Vahil are entitled to immunity in their official capacities under the Eleventh Amendment.

Sovereign Immunity

The Eleventh Amendment to the United States Constitution "bars a suit brought in federal court by the citizens of a state against the state or its agencies, and applies whether the relief sought is legal or equitable." *Johns v. Stewart,* 57 F.3d 1544, 1552 (10th Cir. 1995) (internal citations omitted). Defendants sued in their official capacities under §1983 for money damages or a declaratory judgment are entitled to sovereign immunity under the Eleventh Amendment. *See White v. State of Co.,* 82 F.3d 364, 366 (10th Cir. 1996). "Neither states nor state officers sued in their official capacity are 'persons' subject to suit under section 1983." *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989)).

Therefore, CDOC employees Zavaras and Carter, as state officers, are immune from suit under section 1983 for claims asserted against them in their official capacities. The remaining

defendants, however, are private employees, not state officers.  In the case of Ms. Brizendine, the Court found in its previous Order that to the extent any claims were made against Ms. Brizendine in her official capacity, Mr. Kneen has voluntarily dismissed them.  [#201] at 6.  Therefore, only claims against defendants Zavaras, Carter, and Brizendine in their individual capacity survive.

Although Mr. Kneen's amended complaint does not make it clear, and it is not addressed in Mr. Kneen's response, it appears that he seeks to assert his section 1983 claims against defendants Cabiling and Vahil in their official capacities as well.  Dr. Cabiling is employed by CCA, and there has been no evidence or argument that CCA is an "arm of the state" for purposes of Eleventh Amendment immunity.  Dr. Vahil is a doctor at an outside facility who contracted with CCA to perform surgeries.  There is no evidence or argument regarding Dr. Vahil's employer, or his qualification as a state actor.  Without such argument, the Court is unwilling to decide that a doctor employed by a private prison or who does contract work with a private prison is entitled to sovereign immunity under the Eleventh Amendment.  Therefore, the Court turns to defendants' arguments for summary judgment on the merits.

<u>Deliberate Indifference to Mr. Kneen's Serious Medical Needs</u>

As stated above, Mr. Kneen must demonstrate that (1) he has a sufficiently serious medical need, and (2) the defendants knew of and disregarded an excessive risk to his health.  It is beyond genuine dispute that the objective component of the deliberate indifference test has been met:  Mr. Kneen's Hepatitis C was diagnosed by a physician; it required and continues to require treatment; and it is therefore sufficiently serious.

The question presented by the pending motion is whether there is a genuine dispute of material fact requiring a trial as to whether the individual defendants knew of and disregarded an

excessive risk to Mr. Kneen's health.  As the facts and evidence regarding each defendant are highly individualized, the Court will address each defendant separately.

*Aristedes Zavaras*

Mr. Kneen brings an Eighth Amendment claim against Aristedes Zavaras in his supervisory capacity as Executive Director of CDOC.  To hold Mr. Zavaras liable in his supervisory capacity Mr. Kneen must demonstrate that Mr. Zavaras "through [his] own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009).  The Tenth Circuit has interpreted *Iqbal* to allow a plaintiff to "impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement of which subjects…that plaintiff to the deprivation of any rights secured by the Constitution."  *Dodds v. Richardson*, 614 F.3d 1185, 1999 (10th Cir. 2010) (internal citations omitted).  To succeed Mr. Kneen must establish the following: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Id.*

Mr. Kneen alleges that Mr. Zavaras enforced a policy that (1) permitted inmates to be transferred between facilities without addressing their medical needs, (2) required offenders to complete drug and alcohol treatment prior to receiving Hepatitis C treatment, (3) prioritized offenders who were close to their parole date, and (4) made inmates who would be soon be released ineligible for treatment.

It is undisputed, however, that CDOC and CCCF use the "CDOC Clinical Practice Guideline for Prevention, Identification and Treatment of Viral Hepatitis C" as the standard for

treatment of Hepatitis C for inmates.  [#207-2] at 4, [#216-2].  In his affidavit, Mr. Zavaras states

that he is not involved in the creation of any CDOC clinical standards.  [#207-2] at ¶5-6.  The

standard is developed and maintained by CDOC's Chief Medical Officer and is approved by the

Deputy Director of Prisons, Clinical Services.  [#207-1] at 64; [#207-2] at ¶6.  No contrary

affidavit or other evidence has been presented.  Accordingly, plaintiff has not demonstrated the

existence of a genuine dispute of material facts as to whether Mr. Zavaras created or participated

in the creation of the treatment policy at issue.

       Mr. Zavaras also presents evidence that he was not involved in offender placement

positions.  [#207-2] at ¶¶10-14.  According to Mr. Zavaras, an offender's case manager makes

the decision to move an offender to another facility, and that decision is forwarded to the CDOC

offender services department for ultimate review and approval.  *Id.*  Mr. Kneen has not presented

any evidence that Mr. Zavaras had any control or knowledge of offender transfers or created

those policies.  Mr. Kneen has also not presented any evidence that Mr. Zavaras had any control

over, or knowledge of, Mr. Kneen's transfers.

       Even if, however, Mr. Zavaras could be said to have "possessed responsibility for the

continued operation of a policy," Mr. Kneen has presented no evidence that supports a finding of

a genuine issue of material fact as to whether Mr. Zavaras acted with "deliberate indifference,"s

that is, that he knew of but disregarded an excessive risk to the health of Mr. Kneen or any other

similarly situated inmate.  The Court has received nothing that, if believed, could rationally be

said to support the existence of an "affirmative link" between Mr. Zavaras' conduct and the

constitutional violation.  *Stidham v. Peace Officer Standards & Training*, 265 F.2d 1165, 1167

(10th Cir. 1991).  Without such evidence plaintiff has not demonstrated the existence of a

genuine dispute of material fact as to whether Mr. Zavaras violated Mr. Kneen's constitutional

rights. Because the first requirement to avoid qualified immunity does not exist, summary judgment is granted as to all claims asserted against Mr. Zavaras.

*Mary Kay Carter*

Mary Carter is employed as a nurse practitioner at CTCF. Mr. Kneen argues that Nurse Carter denied and delayed his Hepatitis C treatment notwithstanding that she knew that Mr. Kneen had been denied treatment for years and further delayed treatment because of a remote chance that Mr. Kneen might be released.

Nurse Carter treated Mr. Kneen from January 10, 2010 to March 29, 2010 at CTCF. During those two and a half months Nurse Carter saw Mr. Kneen three times. In their first appointment Nurse Carter obtained Mr. Kneen's history and rescheduled his liver biopsy. [#207-4] at ¶9. Mr. Kneen's liver biopsy occurred in February, and Nurse Carter saw Mr. Kneen for a follow-up appointment on March 8, 2010. *Id.* at ¶¶14-17. At this appointment Nurse Carter reports that Mr. Kneen informed her that he would be paroled soon, so she provided Mr. Kneen with education regarding the need to receive a full course of treatment and CDOC's policy to that effect. Because of the CDOC policy, Nurse Carter recommended that Mr. Kneen wait to start treatment until he had been released or his parole had been denied. *Id.* Nurse Carter states that Mr. Kneen was amenable to this plan. In contrast, Mr. Kneen reports that he only told Nurse Carter that he had been to a parole hearing, and that he objected to delaying treatment and put in a kite requesting treatment on that same day. [#216-1] at ¶74-76. That obviously is a dispute of fact. What is undisputed, however, is that on March 29, 2010 Mr. Kneen again requested treatment from Nurse Carter, and she ordered the required drugs to begin treatment. Treatment in fact began on April 2, 2010.

Even viewing the evidence in the light most favorable to Mr. Kneen this Court cannot conclude that Nurse Carter acted with deliberate indifference to Mr. Kneen's serious medical needs. Nurse Carter did not deny Mr. Kneen's Hepatitis treatment – she is the medical provider who finally began his antiviral treatment. Only two and a half months elapsed from the beginning to the end of Nurse Carter's treatment of Mr. Kneen. Following Mr. Kneen's liver biopsy only 21 days elapsed between Mr. Kneen's kite requesting treatment and the day that Nurse Carter ordered that treatment should begin. Mr. Kneen has admitted that a delay of six months to one year before treatment should not contribute to a significant progression of liver disease. [#216] at ¶16. A delay of 21 days cannot be so unreasonable as to constitute deliberate indifference to Mr. Kneen's medical needs. Nurse Carter's recommendation to wait to begin treatment until the parole board issued its decision is in accordance with the Clinical Standards. A "prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kansas Dep't of Corrections,* 165 F.3d 803, 811 (10th Cir. 1999). Nurse Carter cannot by any reasonable measure be viewed as responsible for prior years that had passed without treatment. Therefore, the Court finds that, while there is a minor dispute of fact concerning the parties' versions of whether a delay in treatment pending a parole board decision was mutually agreeable, plaintiff has not established the existence of a genuine dispute regarding a material fact that could support a finding that Nurse Carter violated Mr. Kneen's Eighth Amendment rights. Accordingly, Nurse Carter is entitled to qualified immunity. Summary judgment is granted as to Nurse Carter.

*Louis Cabiling*

Dr. Cabiling provided Mr. Kneen with the bulk of the questioned medical care. Defendants argue that Dr. Cabiling provided Mr. Kneen with appropriate medical care for his

14

Hepatitis C and was not deliberately indifferent, and therefore Mr. Kneen has not demonstrated any constitutional violation.  Mr. Kneen, however, argues that Dr. Cabiling knew that his condition would worsen without treatment and still delayed antiviral treatment.  Mr. Kneen alleges that Dr. Cabiling's treatment was patently unreasonable, and therefore, the denial and delay of medical care amounts to deliberate indifference to Mr. Kneen's medical needs.

As discussed in detail in the fact section, Dr. Cabiling treated Mr. Kneen for his Hepatitis C on numerous occasions between January 19, 2007 and November 23, 2009.  Dr. Cabiling saw Mr. Kneen on July 11, 2007 to monitor Mr. Kneen's liver enzymes and monitor his Hepatitis C condition.  When Mr. Kneen's test showed elevated liver enzymes in February 2008, Dr. Cabiling saw Mr. Kneen five times in the course of a month and half to order and review liver function tests and Hepatitis panels.  Mr. Kneen's true objection to Dr. Cabiling's treatment appears to focus on when Mr. Kneen provided Dr. Cabiling with proof of drug and alcohol class completion, and when Dr. Cabiling began, or did not begin, antiviral treatment.

In accordance with CDOC's clinical standard for treatment of Hepatitis C Dr. Cabiling did not begin antiviral treatment until he received written documentation that Mr. Kneen had completed six months of substance abuse education.  [#207-1] at 73.  There is a dispute as to when Mr. Kneen provided that documentation.  In his affidavit Mr. Kneen states that he provided proof to Dr. Cabiling on February 1, 2008.  [#216-1] at ¶39.  However, the Ambulatory Health Record to which Mr. Kneen points only shows that Dr. Cabiling made a *referral* to the drug and alcohol program, not that proof of completion was provided.  [#216-4].  On July 30, 2008 Mr. Kneen's Ambulatory Health Record shows that Mr. Kneen informed Dr. Cabiling that he completed the drug and alcohol program, but that Dr. Cabiling asked Mr. Kneen to send him a copy of the certificate so he could begin the process to determine eligibility.  [#207-1] at 43.  Dr.

Cabiling states in his affidavit that Mr. Kneen's proof of completion was submitted by February 23, 2009. [#207-1] at ¶58. Although it is not clear exactly on which date proof of completion was submitted, there is no evidence besides Mr. Kneen's statement that indicates that he submitted proof of completion prior to February 2009.

Regardless, such a dispute is not material to whether or not Dr. Cabiling was deliberately indifferent. Mr. Kneen does not dispute the medical record provided which demonstrates the numerous appointments, lab tests, and medication renewals performed by Dr. Cabiling during the course of the two years that Dr. Cabiling treated him. The undisputed record shows that Dr. Cabiling was actively treating Mr. Kneen's Hepatitis C condition. CDOC's clinical standards provide that "offenders will be offered appropriate treatment based on drug and alcohol education, length of sentence remaining, laboratory findings, liver biopsy results and presence of contraindications." [#207-1] at ¶64. Mr. Kneen has presented no evidence to counter the adequacy and propriety of CDOC's standards. The record shows that Dr. Cabiling was following these standards by offering treatment, and once proof was provided, ordering and conducting all of the necessary tests required prior to beginning antiviral treatment.

Although Mr. Kneen has had Hepatitis C at least since he entered CDOC in 1996, Dr. Cabiling was only capable of treating him for roughly two and a half years of his confinement. Defendant has presented evidence that the delays that occurred subsequent to Mr. Kneen's providing proof of class completion were the result of other medical conditions and required tests and evidence supportive of a conclusion that that Dr. Cabiling made a "good faith effort to diagnose and treat [Mr. Kneen's] medical condition." *Mata v. Saiz*, 427 F.3d 745, 761 (10th Cir. 2005). As the Tenth Circuit has stated "the subjective component is not satisfied, absent an

extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).

Although Dr. Cabiling did not refer Mr. Kneen for antiviral treatment as quickly as Mr. Kneen would have like, plaintiff has presented no evidence that the doctor's treatment decisions reflected anything other than considered medical judgment. "Where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law." *Id.* at 1222-23. What this Court needs to send this case to trial is some evidence establishing the existence of a genuine dispute of fact as to whether Dr. Cabiling acted with deliberate indifference, i.e., that he knowingly disregarded an excessive risk to Mr. Kneen's health. The Court finds that plaintiff has not established such a factual dispute. Accordingly, plaintiff has not established a triable issue as to whether Dr. Cabiling violated Mr. Kneen's constitutional rights, and summary judgment must be granted as to Dr. Cabiling.

*Judy Brizendine*

Ms. Brizendine served as the Health Services Administrator ("HSA") at the Crowley County Correctional facility during the relevant period. As HSA Ms. Brizendine is "administratively in charge of multi-disciplinary clinical services teams that provide services at the facility level or clinical unit." Admin. Regulation 700-001 [#221-8]. Ms. Brizendine is responsible for managing the day-to-day operation of her assigned clinic and for training those who work in the health clinic about how the clinic functions. *Id.*; Brizendine Aff. [#221-3] at ¶3. Mr. Kneen alleges that Ms. Brizendine is liable in her supervisory capacity.

As discussed above, to establish supervisory liability Mr. Kneen must also allege sufficient facts to support Ms. Brizendine's personal participation in the alleged constitutional

violation.  "Individual liability under §1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  Mr. Kneen must allege an "affirmative link" between Ms. Brizendine's conduct and the constitutional violation.  *Stidham*, 265 F.2d at 1167.  Individuals cannot be held liable under §1983 on the basis of supervisory status alone.  *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008).

Mr. Kneen alleges that Ms. Brizendine was in charge of providing timely medical care to inmates and was personally involved in supervising the various providers who delayed his care. In his affidavit Mr. Kneen states that Ms. Brizendine denied his grievance regarding his failure to have a liver biopsy on January 13, 2009.  [#226-1] at ¶64-65.  In support, Mr. Kneen provides a medical record from January 26, 2005 indicating that Ms. Brizendine saw Mr. Kneen regarding a low fat and low cholesterol diet on which he had been placed.  [#226-2].  Mr. Kneen also provides other Ambulatory Health Records that indicate that providers reported to or spoke with Ms. Brizendine regarding Mr. Kneen's care.  [##226-3, 226-4, 226-6].  This evidence indicates that Ms. Brizendine was personally involved in Mr. Kneen's medical treatment.

However, the existence of personal involvement is not enough to show that Ms. Brizendine knowingly disregarded a serious risk to Mr. Kneen's health.  Ms. Brizendine's responsibilities included ensuring that clinical standards, such as those pertaining to Hepatitis C patients, are followed.  However, she is not qualified to override a treating doctor's decisions that implement the exercise of medical judgment.  If she knew that a treatment regimen exposed Mr. Kneen to excessive health risks, then she of course would have a responsibility to intervene. However, plaintiff has not come forward with evidence that establishes a genuine issue of material fact as to such knowledge.  Accordingly, plaintiff has not raised a triable issue of fact

18

concerning Ms. Brizendine's violation of Mr. Kneen's constitutional rights. Accordingly, summary judgment is granted as to Ms. Brizendine.

*Atul Vahil*

Mr. Kneen's complaint against Dr. Vahil amounts to the allegation that Dr. Vahil allegedly advised Mr. Kneen that due to cirrhosis Mr. Kneen would need a liver transplant but then refused to confirm this "diagnosis" to CCCF medical staff. Dr. Vahil disputes that he ever diagnosed Mr. Kneen with cirrhosis or informed him that he needed a liver transplant.

The facts are that CDOC contracted with Dr. Vahil to treat Mr. Kneen's esophageal varices. Dr. Vahil did so. He conducted an EGD and band ligation on three occasions. There are no allegations that Dr. Vahil did not conduct these procedures fully and well. The record shows that Dr. Vahil provided documentation and reports to Mr. Kneen and CDOC regarding each procedure. *Id.* at 8-32.

The facts also are that Dr. Vahil informed CCCF via telephone that Mr. Kneen likely has cirrhosis due to his Hepatitis C and the presence of esophageal varices. [#207-3] at 33. Dr. Vahil informed CCCF that a liver biopsy would be needed to confirm his suspicions. *Id.* Based upon that information, some other doctor would be tasked with the final diagnosis and, if positive, the treatment of cirrhosis. There is no evidence that Dr. Vahil conducted any procedure that would enable him to make a final determination of cirrhosis. Moreover, even if Dr. Vahil did inform Mr. Kneen of an opinion based upon what he saw that Mr. Kneen needed a liver transplant, there was no evidence that Dr. Vahil concealed his opinion from those who might follow up on that opinion out of deliberate indifference to Mr. Kneen's medical needs.

In addition, there is no evidence of causation, i.e., that even if Dr. Vahil's knowingly failed to provide important medical opinions to the CDOC, the resulting delay caused substantial

harm.  The evidence demonstrates that Mr. Kneen's rescheduled liver biopsy occurred February 11, 2010, only three months after Dr. Vahil allegedly failed timely and properly to notify CDOC of his opinion regarding a liver transplant.  Apparently, the biopsy was scheduled to occur even before that, but Mr. Kneen did not make the appointment for unknown reasons.  A delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).  Substantial harm is defined by the Tenth Circuit as "lifelong handicap, permanent loss, or considerable pain." *Id.* at 1278.  Plaintiff has offered no evidence that a delay of two to five months to obtain a liver biopsy to test for cirrhosis caused substantial harm under that standard.

Therefore, because plaintiff has not demonstrated the existence of a genuine issue of material fact concerning deliberate indifference by Dr. Vahil, he has not shown that there is a triable issue concerning an alleged constitutional violation by Dr. Vahil.  Accordingly, summary judgment is granted as to Dr. Atul Vahil.

### Order

1. The motion for summary judgment filed by defendants Zavaras, Carter, Cabiling and Vahil [#207] is GRANTED.

2. The motion for summary judgment filed by defendant Brizendine [#221] is GRANTED.

3. The unopposed motion to vacate the trial date and stay all proceedings until resolution of the qualified immunity "defense" [#233] is DENIED AS MOOT.

4. The Court enters its final written judgment dismissing this civil action and all remaining claims therein with prejudice.

5.   Defendants are awarded their costs to be taxed by the Clerk of the Court pursuant to

Fec. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 13th day of November, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge